## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

---

**MARKEL AMERICAN INSURANCE COMPANY,**

　　　　　*Plaintiff,*

v.　　　　　　　　　　　　　　　　　　　Civil Action No. _____

**METCOR, LTD.,**

　　　　　*Defendant.*

---

## COMPLAINT

　　　NOW COMES Plaintiff, Markel American Insurance Company (hereinafter, "MAIC"), by counsel, and as and for its Complaint for declaratory judgment against Defendant, Metcor, Ltd. (hereinafter, "Metcor"), states as follows:

## NATURE OF THE CASE

　　　1.　　　This action is proceeding pursuant to 28 U.S.C. § 2291 and seeks a declaration of the rights, duties, and obligations of the parties with respect to a certain policy of marine insurance, the Markel American Insurance Company Helmsman Yacht Policy No. MHY00000239378 issued to Metcor for the year running from October 21, 2013 to October 21, 2014 (hereinafter, the "Policy"), a true copy of which is attached as Exhibit 1 to this Complaint.

　　　2.　　　Specifically, MAIC seeks a judgment declaring that it is not required to provide insurance coverage for damage to the canting keel assembly of Metcor's 2005 80-foot Dencho Andrews sloop *DONNYBROOK* (O.N. 1152360) first observed during a voyage from Newport,

Rhode Island to the Caribbean in mid-December of 2013 because the damage to the canting keel assembly was caused by and/or resulted from manufacturer's defects, which cause is expressly excluded from coverage under the Policy.

3.      In the alternative, MAIC seeks a judgment that it is not required to provide insurance coverage for damage to the canting keel assembly of Metcor's 2005 80-foot Dencho Andrews sloop *DONNYBROOK* (O.N. 1152360) first observed during a voyage from Newport, Rhode Island to the Caribbean in mid-December of 2013 if it is determined that that damage was caused by a July 2013 collision with a whale, because no coverage for the July 2013 whale strike was provided under the Policy.

## JURISDICTION AND VENUE

4.      This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure because this dispute involves a policy of marine insurance, which is a maritime contract subject to admiralty jurisdiction.  Additionally, the incident giving rise to Metcor's claim under the Policy involved a vessel documented under the laws of the United States and occurring on the high seas.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Metcor is a citizen of the District of Columbia, in that Metcor is organized under the laws of the District of Columbia and it has its headquarters and principal place of business located at 1500 K Street NW, Suite 350, within the District of Columbia.

6.      MAIC is a Virginia corporation, headquartered at 4521 Highwoods Parkway in Glen Allen, Virginia.

7.      MAIC issued the Policy to Metcor in the District of Columbia.

## STATEMENT OF FACTS

8.      *DONNYBROOK* is a high-performance ocean-racing sloop built in 2004 by Dencho Marine of Long Beach, California.  She was designed to operate with a canting keel, the angle of which was determined by two opposing hydraulic rams set in a keel box that was built into the vessel's hull.

9.      At some time prior to Metcor purchasing *DONNYBROOK*, the vessel's previous owner removed the keel box, keel, and canting machinery from the vessel and replaced that assembly with a longer fixed keel.

10.     Metcor purchased *DONNYBROOK* in 2011.  In early 2012, at Metcor's direction, the original canting keel box, keel, and machinery were re-installed into the vessel.

11.     After the re-installation was complete, *DONNYBROOK* was trucked to the East Coast of the United States, arriving at her new homeport of Baltimore, Maryland in April of 2012.  Thereafter, *DONNYBROOK* was raced and operated routinely along the East Coast, ranging as far North as Nova Scotia and as far South as the Caribbean.

12.     In July of 2013, *DONNYBROOK* participated in an ocean race from Marblehead, Massachusetts to Halifax, Nova Scotia.  During that race, while in the open ocean, *DONNYBROOK*'s crew felt a strong impact that resulted in the vessel suddenly coming to a dead stop.  At about that time, the crew observed a large wounded whale near *DONNYBROOK* and concluded that the vessel had collided with the whale.  An immediate inspection of *DONNYBROOK*'s hull and machinery revealed no damage or any signs of malfunction.  The canting keel was articulated fully to port and starboard with no difficulty and without any unusual noises or movement being observed.  *DONNYBROOK* then resumed the race and reached Halifax, Nova Scotia in good order with no apparent mechanical or structural difficulties.

13.     *DONNYBROOK* was not hauled for inspection following the July 2013 Marblehead-to-Halifax race.  Metcor make no insurance claim to MAIC as a result of the whale strike incident during that race, nor did Metcor notify MAIC about it.

14.     On December 15, 2013, *DONNYBROOK* departed Newport, Rhode Island *enroute* to the Grenadines in the Southern Caribbean.  As this voyage progressed, weather conditions deteriorated.  However, at no point did the weather encountered by *DONNYBROOK* during this voyage exceed that which the vessel was designed to handle safely.

15.     Roughly four days into her December 2013 voyage to the Grenadines, while operating in heavy weather South of Bermuda, *DONNYBROOK*'s crew heard cracking sounds emerging from the vessel's keel box.  The crew also noticed deflections in the keel's hydraulics and structure as the vessel worked through the seas, resulting in the keel's two rams moving even when not in operation.  *DONNYBROOK*'s master decided to lock the keel in place out of concern that the canting keel mechanism and/or the keel box itself might be failing.  He then elected to divert to Tortola in the British Virgin Islands, where *DONNYBROOK* arrived on December 22, 2013.

16.     On or about January 21, 2014, Mector made a claim under the Policy's hull coverage for what it contended was weather-related damage to the vessel's keel.

### COUNT 1 – COVERAGE IS EXCLUDED UNDER THE POLICY'S MANUFACTURER'S DEFECTS EXCLUSION

17.     MAIC repeats and re-alleges paragraphs 1 through 16 of this Complaint as if set forth in full herein.

18.     The damage to DONNYBROOK's canting keel assembly and the canting keel assembly itself have been inspected carefully by a series of highly trained and qualified

professionals.  Those inspections included one conducted in January of 2014 by Patrick Goodow of High Tech Marine Surveys while DONNYBROOK was still in Tortola, one conducted by marine surveyor Matthew Schmall (also in January of 2014 in Tortola), and a joint inspection conducted in Newport, Rhode Island in October of 2014 by Steve Burke, a naval architect who specializes in high-performance ocean sailing vessels, and Bruce Pfund, one of the nation's leading specialists in composite/laminated materials and construction in vessels.

19.     As a result of those inspections, it was discovered that the construction of the keel box in DONNYBROOK did not conform to the original drawings for that assembly.  It was also observed that the workmanship associated with the reinstallation of the canting keel assembly was not in accordance with standard marine practices.   Indeed, that construction and workmanship was sufficiently deficient to the point where it properly could be described as crude.  As a result of the poor workmanship and failure to conform to the keel assembly's original design, the keel's hydraulic rams were not adequately supported, the keel box suffered from a significant reduction in its structural integrity, and the strength and integrity of that highly loaded region of the vessel was compromised significantly.

20.     The damage that was observed to have occurred in *DONNYBROOK*'s keel assembly during the December 2013 voyage (and for which Metcor has made its instant claim under the Policy) resulted directly from the defective workmanship associated with that canting keel's reinstallation into *DONNYBROOK* in early 2012.

21.     None of the damage that was observed to have occurred in *DONNYBROOK*'s keel assembly during the December 2013 voyage (and for which Metcor has made its instant claim under the Policy) appears to have been caused by the vessel's July 2013 whale strike.

22.     But for the crude and otherwise defective workmanship associated with the reinstallation of the canting keel into *DONNYBROOK*, there is no reason to believe that *DONNYBROOK*'s keel mechanism and structure would have failed or exhibited signs of damage during the vessel's December 2013 voyage, which is the same failure/damage for which Metcor has made its claim under the Policy.

23.     The Policy provides coverage generally for sudden accidental direct physical loss or damage to the vessel insured.

24.     The Policy contains an explicit exclusion from coverage that reads as follows: "We will not pay for loss, damage or expense caused by or resulting from: . . . 5) manufacturer's defects . . . ."

25.     The Policy defines a manufacturer's defect as follows: "Manufacturer's defect means the improper, incorrect or inadequate manufacturing process of the insured yacht's hull or machinery or any of its components.  Manufacturer's defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, latent defects, or design defects."

26.     The proximate and efficient cause of the claimed damage to *DONNYBROOK*'s keel mechanism and assembly, for which Metcor has made its claim under the Policy, was the defective manufacture of *DONNYBROOK*'s canting keel when that same keel assembly was reinstalled into the vessel.

27.     The defective re-installation of *DONNYBROOK*'s canting keel constitutes a "manufacturer's defect" as that term is defined in the Policy.

28.     All of the loss, damage, and/or expense for which Metcor made its instant claim under the Policy thus was caused by and/or resulted from a manufacturer's defect.

29.     There is no coverage under the Policy for the loss, damage, and/or expense to *DONNYBROOK*'s keel mechanism for which a claim has been made by Metcor because such loss, damage, and/or expense was caused by and/or resulted from a manufacturer's defect, which is expressly excluded from coverage under the Policy.

**COUNT 2 – PLED IN THE ALTERNATIVE--SHOULD THE COURT DETERMINE THAT THE 2013 WHALE STRIKE CAUSED DAMAGE TO THE KEEL, COVERAGE IS EXCLUDED BECAUSE THE 2013 WHALE STRIKE OCCURRED OUTSIDE THE NAVIGATIONAL COVERAGE LIMITS OF THE POLICY AND BECAUSE METCOR FAILED TIMELY TO PROVIDE NOTICE OF THE INCIDENT TO MAIC**

30.     MAIC repeats and re-alleges paragraphs 1 through 29 of this Complaint as if set forth in full herein.

31.     A true copy of the predecessor MAIC policy in effect for the policy year running from October 21, 2012 to October 21, 2013 (hereinafter, the "2012-2013 Policy") is attached to this Complaint as Exhibit 2.

32.     The 2012-2013 Policy's General Conditions section provides that "This policy applies only to loss which occurs . . . on land or water within the navigational limits shown on the Declarations Page."

33.     By its terms, the 2012-2013 Policy established the navigational limits for its coverage as being "Coastwise and inland waters between Eastport, ME and Key West, FL, including the Bahamas and Turks and Caicos Islands."

34.     Metcor was well aware of the need for it to purchase separate trip endorsements from MAIC for *DONNYBROOK*'s open ocean voyages outside of the 2012-2013 Policy's navigational limits because Metcor purchased several such endorsements from MAIC for *DONNYBROOK* prior to the July 2013 Marblehead-to-Halifax race. *See, e.g.,* Exhibit 2, Page

MHY5076-0201 for 2012 voyage; MHY5031-0210 for 2013 voyage, a true copy of which is attached to this Complaint as Exhibit 3.

35.     Metcor did not purchase an ocean trip endorsement for *DONNYBROOK*'s July 2013 race from Marblehead, Massachusetts to Halifax, Nova Scotia.

36.     *DONNYBROOK*'s July 2013 whale strike occurred in the open ocean well offshore and far outside of the vessel's navigational limits established by the Policy.

37.     Because *DONNYBROOK* collided with the whale outside of the Policy's navigational limits, Metcor did not and does not have coverage under the Policy for any damage, loss, and/or expense that *DONNYBROOK* may have sustained as a result of her colliding with the whale.

38.     The Policy's General Conditions section also requires the insured immediately to report any loss or damage which may be covered under the Policy.  That section further provides that failure to comply with the foregoing duty will result in no coverage being provided for that loss.

39.     Metcor failed to notify MAIC about *DONNYBROOK*'s July 2013 whale strike. MAIC first learned of the incident more than six months after it occurred in the course of MAIC's investigating Metcor's instant claim arising from weather-related damage alleged to have occurred in December of 2013.

40.     Because Metcor failed in its obligation immediately to notify MAIC of the July 2013 whale strike, Metcor has no coverage under the Policy for any damage, loss, and/or expense that *DONNYBROOK* may have sustained as a result of her colliding with the whale.

## PRAYER FOR RELIEF

41.     MAIC repeats and re-alleges paragraphs 1 through 39 of this Complaint as if set forth in full herein.

42.     MAIC believes it is justified in denying coverage based upon the Policy's manufacturer's defect exclusion because the damage to *DONNYBROOK*'s keel assembly observed during the vessel's December 2013 voyage from Newport, Rhode Island to the Caribbean was caused by and/or resulted from a manufacturer's defect.

43.     In the alternative, if the Court was to determine that the whale strike caused or contributed to the damage to *DONNYBROOK*'s keel assembly observed during the vessel's December 2013 voyage from Newport, Rhode Island to the Caribbean, MAIC believes it is justified in denying coverage under the Policy because *DONNYBROOK* collided with the whale outside of the Policy's navigational limits and/or because Metcor failed immediately to notify MAIC of that incident.

44.     In its communications with MAIC, Metcor has repeatedly and unambiguously communicated its contention that Metcor is entitled to be paid by MAIC under the Policy for the damage, loss, and/or expense observed to have been sustained by *DONNYBROOK*'s keel assembly during her December 2013 voyage from Newport, Rhode Island to the Caribbean.

45.     An actual and justiciable controversy exists between MAIC and Metcor over whether coverage is available to Metcor under the Policy for the damage, loss, and/or expense observed to have been sustained by *DONNYBROOK*'s keel assembly during her December 2013 voyage from Newport, Rhode Island to the Caribbean.  In particular, the parties disagree as to whether such damage, loss, and/or expense is excluded from coverage because it was caused by and/or resulted from a manufacturer's defect.

46.     Given the foregoing, MAIC is entitled to the judgment of this Court declaring that it has no obligation to provide Metcor insurance coverage under the Policy for any damage, loss, and/or expense to *DONNYBROOK*'s keel assembly occurring or observed during the vessel's December 2013 voyage from Newport, Rhode Island to the Caribbean.

**WHEREFORE**, Plaintiff, Markel American Insurance Company, respectfully prays for:

(1) a judgment declaring that it has no obligation to provide Metcor insurance coverage with respect to any and all damage, loss, and/or expense to *DONNYBROOK*'s canting keel assembly occurring or observed during the vessel's December 2013 voyage from Newport, Rhode Island to the Caribbean; and

(2) such other and further relief as this Court may deem just and proper.

MARKEL AMERICAN INSURANCE COMPANY


By:  /s/ Leonard L. Fleisig_____

Leonard L. Fleisig, Esquire (DC Bar No. 435944)
Christopher A. Abel, Esquire (*pro hac vice*
        application pending)
D. Sutton Hirschler, Esquire (*pro hac vice*
        application pending)
Willcox & Savage, P.C.
Wells Fargo Center
440 Monticello Avenue, Suite 2200
Norfolk, Virginia  23510
Telephone: (757) 628-5547
Facsimile: (757) 333-3547
lfleisig@wilsav.com
cabel@wilsav.com
dhirschler@wilsav.com