# EXHIBIT

# 1



# MARKEL AMERICAN INSURANCE COMPANY

### GLEN ALLEN, VIRGINIA

**MARKEL**

| WATERCRAFT DECLARATIONS PAGE |
|---|

Page 1 of 1

| Policy Number: MHY00000239378 | Agency Number: 10252 - 000001 | Effective Date/Transaction: 10/21/2013    New |
|---|---|---|

| Policy Period: From 10/21/2013    To 10/21/2014 | 12:01 A.M. Standard Time at Your Mailing Address |
|---|---|

| Insured Name and Mailing Address | Your Agent    949-642-5174 |
|---|---|
| METCOR, LTD<br>1500 K STREET, NW, SUITE 350<br>Washington, DC 20005 | MARINERS GENERAL INS GROUP<br>206 RIVERSIDE AVE STE A<br>NEWPORT BEACH, CA 92663 |

**Yacht Description:** 80' 2005 DENCHO ANDREWS SLOOP      **HIN:** 1152360

**Tender:**

**Yacht Mooring Location:** Baltimore, MD 21224

**Navigation Limits:** Coastwise and inland waters between Eastport ME and Key West FL including the Bahamas and Turks and Caicos Islands. The insured yacht must not be south of Cumberland Island GA  June 01 to November 01.

**Lay-Up:** None      **From:**      **To:**

| COVERAGE | LIMIT | DEDUCTIBLE | PREMIUM |
|---|---|---|---|
| Hull, Agreed Value | $475,000 | $14,250 | $9,547 |
| Protection and Indemnity | $2,000,000 | Number of Paid Crew = 2 | $3,203 |
| Uninsured Watercraft | $2,000,000 | $0 | incl. |
| Medical Payments | $25,000 | $0 | incl. |
| Oil Pollution Liability | $854,400 | $0 | incl. |
| Longshore and Harbor Workers' Compensation | Incl. | | Incl. |
| Personal Effects | $10,000 | $250 | incl. |
| Emergency Towing and Assist | $2,500 | $0 | incl. |
| Rental Reimbursement | $2,500 | 0 | incl. |

| | Endorsement Premium Total: $2,250.00 | Unit Premium: **$15,000.00** |
|---|---|---|

| Minimum Earned Premium: $250.00 | Policy Taxes/Fees: $0.00 | TOTAL ANNUAL PREMIUM: $15,000.00 |
|---|---|---|

**Loss Payee**

**Producer**      **Customer Ref#**

**Forms and Endorsements:**  MHY5001-0108    MHY5076-0210    MHY5076-0210    MHY5035-0108    MHY5036-0108
MHY5043-0108    MHY5079-1209    MHY5030-0412    MHY5087-1209

**Signed on:** 2013-09-11    **at** NEWPORT BEACH, CA      *Bruce A. Key*

MHY5000-0108                    Insured                    9/12/2013



**MARKEL**

M<small>ARKEL</small> A<small>MERICAN</small> I<small>NSURANCE</small> C<small>OMPANY</small>

# THE MARKEL HELMSMAN YACHT POLICY

# TABLE OF CONTENTS

## THE MARKEL HELMSMAN YACHT POLICY

### READ YOUR POLICY CAREFULLY.

**Beginning on Page**

INSURING AGREEMENT ........................................................................................................................1

DEFINITIONS ........................................................................................................................................1

GENERAL CONDITIONS .......................................................................................................................3

GENERAL EXCLUSIONS .......................................................................................................................6

PHYSICAL DAMAGE ............................................................................................................................6

PROTECTION AND INDEMNITY ..........................................................................................................11

OIL POLLUTION LIABILITY ...............................................................................................................12

LONGSHORE AND HARBOR WORKERS' COMPENSATION ..................................................................13

MEDICAL PAYMENTS ........................................................................................................................13

UNINSURED AND UNDERINSURED WATERCRAFT ............................................................................14

In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages you have selected as shown on the Declarations Page, which is part of this policy.

By accepting this policy, you agree that the statements on the Declarations Page and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.

It is warranted that the **insured yacht** is seaworthy at the inception of this insuring agreement. Violation of this warranty voids this insuring agreement from its inception.

## DEFINITIONS

Throughout this policy, most words and phrases that have special meanings appear in **bold**. Only the pronouns "we", "our", "us", "you", "your", and "yours" are defined, but do not appear in **bold**. This section defines some of the more general terms used in this policy. **Bold** terms that are not listed in this section, are defined in the sections they appear.

1.  You, your and yours refer to the 'Insured' named on the Declarations Page.

2.  The words we, us and our refer to the company, shown on the Declarations Page, which is providing this insurance.

3.  **Actual cash value** means the **replacement cost** of the lost or damaged property less depreciation.

4.  **Bodily injury** means physical injury, sickness or disease sustained by a person including death resulting from any of these.

5.  **Constructive total loss** means that the cost to recover and/or repair the damaged property will exceed the applicable limit of insurance.

6.  **Contaminant** means any petroleum product, chemical, lubricant, or solvent normally associated with the use and operation of a watercraft.

7.  **Design defect** means a flaw in the structural plan of the **insured yacht's** hull or machinery, or any of its components. Design defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, **latent defects**, or **manufacturer's defects**.

8.  **Family member** means any person related to you by blood, marriage, or adoption (including a ward or foster child) who resides in your household.

9.  **Insured** means you and any person, firm, corporation or legal entity that may be operating the **insured yacht** with your prior permission. However, this does not include a paid captain or any paid crew member of the **insured yacht**. Nor does it include any person, firm, corporation or other legal entity or any of their agents or employees operating a shipyard, boat repair facility, marina, yacht club, sales agency, chartering agency, yacht broker, boat service station, salvor, towing service or similar organization.

10. **Insured yacht** means:
    a.  The yacht shown on the Declarations Page, including its spars, sails, rigging, tackle, fittings, machinery and equipment necessary for the safe operation and maintenance of the yacht. It also includes **tenders**.
    b.  A **newly acquired yacht**.

11. **Latent defect** means a defect in the insured yacht's hull or machinery existing when the insured yacht or its components were built and not discoverable by common means of testing. Latent defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **manufacturer's defects, or design defects**.

12. **Manufacturer's defect** means the improper, incorrect or inadequate manufacturing process of the **insured yacht's** hull or machinery or any of its components. Manufacturer's defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **latent defects, or design defects**.

13. **Marine electronics** means electronic devices designed specifically for marine navigation, including fish finders, or marine communication.

14. **Newly acquired yacht** means a yacht that you acquire during the policy period, which is similar to the yacht described on the Declarations Page and is no more than 5 years old, provided we insure all yachts owned by you, and you pay any additional premiums due. The limit of insurance applicable to any **newly acquired yacht** will be the lesser of its **actual cash value** or your purchase price, but not more than 150% of the highest limit shown on the Declarations Page for 'Hull'.

Coverage as a **newly acquired yacht** will cease if any of the following occur:
  a. this policy expires;
  b. a period of 15 days has passed since you acquired the yacht; or
  c. you report the new yacht and its values to us with a request for insurance coverage. If we determine the new yacht to be an acceptable risk, we will charge you additional premium and amend this policy or we will issue a new policy for your new yacht from the date you purchased the yacht.

15. **Non-owned yacht** means any watercraft that is not:
  a. owned in whole or in part by you or any **resident**;
  b. rented or under charter to you;
  c. being used for other than private pleasure;
  d. available for your regular use;
  e. more than 5 feet longer than the **insured yacht**;
  f. designed for, or capable of, speeds in excess of 65 miles per hour; or
  g. a **personal watercraft**.

16. **Occurrence** means a single event or an accident or series of accidents caused by a single event.

17. **Property damage** means damage to tangible property.

18. **Personal watercraft** means a vessel which uses an inboard engine powering a water jet pump as its primary source of motive power, and which is designed to be operated by a person sitting, standing, or kneeling on the vessel.

19. **Replacement cost** is the least of the following amounts:
  a. the applicable limit shown on the Declarations Page;
  b. the cost to repair or replace the lost or damaged property using other new property:
    i. of comparable material and quality; and
    ii. used for the same purpose; or
  c. the cost to replace the lost or damaged property with substantially identical property.

20. **Resident** means any person who lives in your home.

21. **Tender** means any auxiliary watercraft, other than a **personal watercraft**, whose main purpose is to service the **insured yacht** for purposes of delivering supplies or ferrying passengers to and from shore. The tender must be able to be stored on board the **insured yacht** while the **insured yacht** is under way.

22. **Windstorm** means tropical depression, tropical storms, and hurricanes as designated by the National Weather Service and/or National Hurricane Center.

## GENERAL CONDITIONS

1. Use of the **Insured Yacht**

   If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:

   a. The **insured yacht** is for private pleasure use only. Coverage is not provided for charter, hire, lease or any other commercial use. Recreational entertaining of the **insured's** business clients on the **insured yacht** is not considered commercial use.

   b. The **insured yacht** may be towed overland on its trailer, provided the weight of the **insured yacht**, trailer and any other equipment do not exceed the towing capacity as provided by the manufacturer of the towing vehicle. The **insured yacht** may not be transported overland more than 350 miles by any contract or common carrier. The **insured yacht** may not be transported overland outside of the Continental United States by any contract or common carrier. Any contract or common carrier must be licensed and must provide a certificate of insurance covering the **insured yacht**. This policy is then excess to the coverage provided by the licensed contract or common carrier.

   c. Coverage is not provided anytime the **insured yacht** is being transported as waterborne cargo.

   d. If 'Lay-Up' is shown on the Declarations Page, during the lay-up period shown:

      i. If the Declarations Page indicates that lay-up is afloat, then the **insured yacht** must be in a safe berth for storage and the **insured yacht** may not be operated except as required to change berths within the immediate berthing location. However, if you are required to move the **insured yacht** for the purpose of safety, repairs, and alterations or for betterments and improvements, coverage will not be suspended.

      ii. If the Declarations Page indicates that lay-up is ashore, then the **insured yacht** may not be afloat. An **insured yacht** on a permanent lift or hoist will be considered laid up ashore if it is out of commission and properly winterized.

2. Policy Period/Territory

   This policy applies only to loss which occurs during the policy period as shown on the Declarations Page, and:

   a. on land within the United States of America and Canada; or

   b. on land or water within the navigation limits shown on the Declarations Page.

3. Misrepresentation or Fraud

   All insurance provided by this policy will be null and void if you, at any time, either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. No action or inaction by us will be deemed a waiver of this provision.

4. Notice of Cancellation

   You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

   We may cancel this policy by delivering or mailing notice of cancellation to the first named 'Insured' at the last address shown in our records at least:

   a. ten (10) days before the cancellation takes effect if:

      i. the cancellation is for nonpayment of premium; or

      ii. this policy has been in effect for less than sixty (60) days and is not a renewal policy.

   b. thirty (30) days before the cancellation takes effect in all other cases.

After this policy has been in effect for more than 16 days, we may cancel only:

a. for nonpayment of premium due;
b. for misrepresentation or fraud;
c. for substantial breach of your duties under this policy;
d. if the risk changed substantially since the policy was issued; or
e. for failure to comply with our underwriting requirements within 60 days of the term effective date.

Proof of mailing of this notice to the first named 'Insured' will be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice will become the end of the policy period.

This policy will terminate without any written notice and all premiums will be deemed fully earned by us when we pay for a total loss or a **constructive total loss.**

5. Return Premium
If this policy is cancelled, you may be entitled to a premium refund. If we cancel the policy, any return premium will be computed on a pro-rata basis. If you cancel the policy or if the policy is cancelled for nonpayment of premium, any return premium will be computed on a 90% pro-rata basis. The return premium cancellation is subject to our minimum earned premium. Any return premium will be paid to you within a reasonable amount of time after the cancellation.

6. Conformity to Statute
This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state law will apply. Any provision of this policy that conflicts with applicable law or regulation is hereby amended to conform to the minimum requirements of the law or regulation.

7. Policy Changes
No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

When we broaden coverage during the policy period, without charge, the policy will automatically provide the broadened coverage.

8. Legal Action Against Us
a. No suit or action may be brought against us unless there has been full compliance with all terms of this policy.
b. With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 12 months after the date you first have knowledge of the loss.
c. With respect to all other coverage under this policy, no suit or action may be brought against us until the amount of a claim against you has been determined or agreed upon.
d. Nothing in this policy gives any person or organization the right to join us as defendants in a suit brought against you.

9. No Benefits to Others
No person or organization which has custody of the **insured yacht** and is to be paid for services, will benefit from this insurance.

10. Transfer of Interest
We do not provide any coverage under this policy if you sell, assign, transfer or pledge the insured property unless prior written consent has been obtained from us.

a. persons covered under this policy at the time of your death;
b. your legal representative while acting within the scope of duties of a legal representative; or
c. any person having proper custody of the **insured yacht** until a legal representative is appointed.

## 11. Right of Recovery

You may have the right to recover from another party who is responsible for your loss. If we pay your loss under this policy, this right of recovery will belong to us up to the amount that we have paid you. If you, or anyone acting on your behalf, take any action that impairs our right to recover, we may consider this policy void and without effect as to such loss. However, signing written contracts for storage or slip rental or registration forms for sailboat races that include a waiver of subrogation provision will not void this policy.

## 12. Claim or Suit Against You

You must immediately notify us and send us every demand notice, summons or other legal papers received by you or your representative, if a claim is made or a suit is brought against you for liability that is covered under this policy. We will pay the ensuing cost of the suit and have the sole right to control the defense of the suit. We also have the option of naming attorneys to represent you in the suit.

## 13. General Duties Following a Loss

You must report immediately to us or our authorized agent any accident, loss, damage, or expense which may be covered under this policy. This report should give full details about when and where the loss occurred, how it happened and the name and address of all the people involved including all witnesses. You are required to immediately notify the authorities of any theft, vandalism or malicious damage to your insured property, if any injury is involved, or if required by law. You must also permit us to inspect any damage before repairs are made.

After requested by us, you must file within ninety (90) days thereof, with us or our authorized agent, a written statement about the details of the loss. This statement must be signed and sworn by you.

You, as often as we may reasonably require, will:
a. exhibit to any person we designate all that remains of any property that may be covered under this policy;
b. submit and subscribe to examinations under oath by any person named by us. If more than one person is examined, we have the right to examine and receive statements separately from each person and not in the presence of the others;
c. produce for examination and permit extracts and copies of all books of account, bills, invoices, other vouchers and any other tangible items related to the claimed loss, or certified copies thereof if the originals are lost, at such reasonable time and place as may be designated by us or our representative.

You must cooperate with us in the investigation, defense or settlement of any loss.

If you do not comply with these general duties, then no coverage for the loss will be provided.

## 14. Other Insurance

This policy is excess over any other valid and collectible insurance.

## 15. Nonrenewal

If we decide not to renew your policy, we or our authorized representative will mail to the first named 'Insured', at the address shown on the Declarations Page, written notice of nonrenewal. The written notice will be mailed to the first named 'Insured' at least thirty (30) days before the end of the policy term. A copy of the notice will also be sent to any lienholder named on the Declarations Page. If we decide not to renew your policy, our mailing of notice to the address of the first named 'Insured' shown on the Declarations Page will constitute proof of notice as of the date we mail it.

No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of:

1. Extended Radioactive Contamination
   a. ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;
   b. the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;
   c. any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;
   d. the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purpose.

   However, if while the **insured yacht** is within the policy territory, a fire arises directly or indirectly from one or more of the above causes in items a., b., and d., then any loss or damage arising directly from that fire will, subject to the provisions of this policy, be covered. No coverage is provided for any loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

2. War or any warlike operation. This includes declared and undeclared wars, civil wars, revolutions or any civil unrest.

3. The lawful or unlawful capture, seizure, requisition or detainment of your **insured yacht** by a civil authority or any attempt at any of these.

4. An actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

5. Preparation for or participation in any race, speed, or stunting contest. This does not apply to sailboats.

6. Willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**.

## PHYSICAL DAMAGE

1. Coverage

   a. Hull Coverage (Including **Tenders**)
      i. Coverage
         We will cover sudden accidental direct physical loss or damage to the **insured yacht**.

      ii. Under Hull Coverage, we do not cover:
         1) dock boxes, moorings, cradles, lifts or shore stations;
         2) **personal watercraft**;
         3) items which are covered elsewhere under this policy; or
         4) fuel.

1) In the event of a total loss or **constructive total loss**, we will pay the applicable limit on the Declarations Page.

However, if there is a total loss or **constructive total loss** to a **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page for it, then the loss to such a **tender** will be adjusted as a partial loss to the **insured yacht**. The most we will pay for loss or damage to such a **tender** will be 5% of the 'Hull' limit, subject to a maximum of $50,000.00.

2) In the event of a partial loss, we will pay for damage on a **replacement cost** basis, except as described in the Actual Cash Value provision.

3) Actual Cash Value
We will pay for repairs to or replacement of the following lost or damaged property on an **actual cash value** basis:
a) sails and protective covers of any type;
b) outdrive units and outboard motors starting with the 6th year from the date of manufacture;
c) a **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page for it;
d) carpeting, upholstery, cushions, and any fabric; and
e) bottom paint.

Any partial loss resulting from **windstorm** will be paid on an **actual cash value** basis.

We pay for repairs that are made in accordance with the manufacturer's specifications or accepted repair practices, including spot repair.

If the **insured yacht** was damaged before the loss, we will not pay to repair the prior damage. In the event of a total loss or **constructive total loss**, the amount we will pay will be reduced to the cost that would have been incurred had the prior damage been repaired.

iv. Exclusions
We will not pay for loss, damage or expense caused by or resulting from:
1) wear and tear, gradual deterioration, inherent vice, marring, electrolysis, corrosion, rust, dampness of atmosphere, weathering, osmosis, blistering, mold, mildew, wet or dry rot;
2) failure to maintain the **insured yacht** (including its machinery and equipment) in good condition so that the **insured yacht** cannot be damaged by ordinary weather or water conditions or the rigors of normal use. However we will pay for loss, damage or expense caused by ice or freezing, provided you contracted with a commercial marina or repair facility for necessary winterization maintenance;
3) diminution of value;
4) **windstorm** for any canvas, or **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page; or
5) **manufacturer's defects** or design defects. However, if the loss or damage has not resulted from the negligence of any **insured**, this exclusion does not apply to loss, damage or expense directly caused by explosion, bursting of boilers, breakage of shafts or any **latent defect** in the hull or machinery (excluding the cost and expense of replacing or repairing the latently defective part).

b. Personal Effects Coverage
i. Coverage
We will cover sudden accidental direct physical loss or damage to your personal effects, and those of your guests and unpaid crew members, while on board the **insured yacht** or while being loaded on or unloaded from the **insured yacht**. Personal effects are items such as sports equipment, clothing, and other personal items.

        1) accounts, bills, money, traveler's checks, or any other valuable papers or documents;

        2) jewelry, watches or furs;

        3) watercraft including **personal watercraft**;

        4) property which is covered under Hull Coverage; or

        5) dock boxes, moorings or cradles.

iii. What We Pay

We will pay the **actual cash value** of the personal effects. Our liability for any one **occurrence** will not exceed the limit for 'Personal Effects' on the Declarations Page.

iv. Exclusions

We will not pay for loss, damage or expense caused by or resulting from:

        1) wear and tear, gradual deterioration, vermin, or inherent vice;

        2) mechanical or electrical breakdown, unless caused by lightning;

        3) theft or unexplained disappearance unless there are visible marks of forcible entry or removal;

        4) **windstorm**; or

        5) diminution in value.

c. Trailer

i. Coverage

We will cover sudden accidental direct physical loss or damage to your trailer, but only if used exclusively for transporting the **insured yacht**.

ii. What We Pay

We will pay the **actual cash value** of the trailer. Our liability for any one **occurrence** will not exceed the limit for 'Trailer' on the Declarations Page.

iii. Exclusions

We will not pay for loss, damage or expense caused by or resulting from:

        1) wear and tear, gradual deterioration, or inherent vice;

        2) mechanical breakdown; or

        3) diminution in value.

d. Rental Reimbursement Coverage

i. Coverage

If the **insured yacht** is damaged by a covered cause of loss, we will reimburse you for the reasonable expenses you incur to charter or rent a replacement yacht. We will only reimburse you if the replacement yacht is similar to the **insured yacht** and has a rated speed not in excess of 45 miles per hour. We will only reimburse you:

        1) during the **repair period**;

        2) if the **repair period** is longer than 2 days; and

        3) for expenses you incur after the first 2 days of the **repair period**.

**Repair period** as used in this coverage means the period of time that begins with the date of the sudden accidental direct physical loss or damage to the **insured yacht**; and ends on the date when the **insured yacht** should be repaired, rebuilt or replaced with reasonable speed and similar quality. The expiration date of this policy will not cut short the period of repair.

ii. Exclusions

We will not pay for hotels, motels or any other lodging ashore, dockage, rental cars or other ground transportation, airfare, meals, groceries or food. We will not reimburse you for costs when the replacement yacht was rented from any **family member**.

c. Emergency Towing and Assistance

   i. Coverage

We will reimburse the reasonable expenses you incur resulting from the following services to the **insured yacht** if help is not available and you must obtain commercial assistance:

    1) towing to the nearest place where necessary repairs can be made;

    2) delivery of fuel, oil, parts or loaned battery (excluding the cost of the items themselves) or emergency labor, while away from a safe harbor.

If 'Trailer' coverage is shown on the Declarations Page, this coverage also applies to such expenses incurred because the trailer is disabled. However, we will not pay for delivery of fuel to any conveyance transporting the **insured yacht** if the reason the trailer is disabled is because the conveyance is out of fuel.

   ii. What We Pay

The most we will pay for any one **occurrence** is the limit for 'Emergency Towing and Assistance' shown on the Declarations Page.

f. Windstorm Extra Expense

   i. Coverage

If a premium is shown on the Declarations Page for 'Hull' and if a **windstorm** watch or warning is issued for the area where your **insured yacht** is moored, we will share the costs that you incur to protect the **insured yacht** from loss or damage:

    1) to have the **insured yacht** professionally hauled out of the water at the time the watch or warning is issued for your mooring area and to have the **insured yacht** launched after the watch or warning has ended; or

    2) to hire a qualified individual, who is not an **insured** under this policy, to navigate the **insured yacht** to a safe harbor as a result of the watch or warning; or

    3) to hire a marina or boat yard to remove and safely stow the covers or other equipment that is normally stored on the deck of the **insured yacht**. Expense for the acquisition of lines, anchors and additional equipment to secure the **insured yacht** are not included in this coverage.

We will also share the reasonable costs described above that you incur within the twenty-four (24) hour period prior to the issuance of a watch or warning, provided that a watch or warning is subsequently issued for the area where your **insured yacht** is moored.

   ii. What We Pay

We will pay 50% of your actual incurred expenses, subject to a maximum of $500 for any one **windstorm**, and $1,000 total in any single policy period.

2. Loss Conditions

a. Deductibles

   i. We will not pay for loss, damage or expense for any one **occurrence** until the amount of the loss, damage or expense exceeds the applicable deductible shown on the Declarations Page.

   ii. The deductible for a **tender** is $500.

   iii. The deductible applicable to **marine electronics** for **insured yachts** less than or equal to 10 years of age for all covered causes of loss except theft without evidence of forced removal or forced entry is $500. If the above conditions are not met, the deductible shown for 'Hull' on the Declarations Page applies. Age, as used in this provision, is calculated by subtracting the model year of the hull from the calendar year, and adding one (1) to the result.

   iv. In the event that loss occurs as a result of one **occurrence** and the loss would require the application of more than one deductible, only the highest deductible will be applied to the loss.

   v. If you have a total loss or **constructive total loss** to an **insured yacht** or a tender, then no deductible will be applied to the loss.

   vi. The policy deductible does not apply to the costs incurred under Windstorm Extra Expense.

Deductible will apply to all partial, total or **constructive total losses** caused by or resulting from any **windstorm**.

b. Salvage and Abandonment
If we pay the limit as shown on the Declarations Page for 'Hull' or 'Trailer', we reserve the right to take possession of the remains if we elect. At our request, you will transfer the title of the property to us or to a salvage buyer appointed by us. Any recovery or salvage on a loss will accrue entirely to our benefit until the sum paid by us has been made up.

We are not obligated to accept any property you abandon, nor are we obligated to pay any storage fees incurred because you abandoned any property to any other person or organization.

c. Payment of Loss
We will pay losses within 30 days after the earliest of the following:
  i. we reach agreement with you;
  ii. final judgment is rendered in a court of law;
  iii. an appraisal award is filed with us; or
  iv. a proof of loss is accepted by the company.

d. Appraisal
If you dispute our evaluation of the amount of the loss, then you must submit a written request for appraisal within one year of the date of loss. You and we will then each appoint and pay for a competent and disinterested appraiser. If the two appraisers cannot agree on the amount of the loss, the appraisers or a judge of the local court of record will select an umpire who will decide any differences. The expense of the umpire and all other expenses of the appraisal will be shared equally by you and us. An award in writing by any two such persons will determine the amount of your loss. You and we will be bound by that amount.

Appraisal is not available where there is a dispute as to the existence of coverage. Nothing herein will prejudice or in any way impact our right to contest coverage and to bring suit in a court of competent jurisdiction.

e. Protect and Recover
In the event of a covered loss to the **insured yacht**, you must protect the **insured yacht** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under Hull coverage, but not to exceed the limit for 'Hull' on the Declarations Page. We will not cover any further loss incurred due to your failure to protect the **insured yacht**.

f. Loss Payee
If a 'Loss Payee' is named on the Declarations Page, any loss will be paid to you and the 'Loss Payee' as your and their interests appear. If your interest in the **insured yacht** is terminated, any loss payment will only recognize the 'Loss Payee's' interest. No change in title or ownership of the **insured yacht** or any acts of yours will affect the 'Loss Payee's' interest in this policy except that the 'Loss Payee's' interest will not be protected in the event of fraud, misrepresentation, material omission, or willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**.

You or the 'Loss Payee' must let us know of any change of ownership or any increase in hazard of which you or the 'Loss Payee' are aware.

If you fail to give us sworn proof of loss within 30 days when requested by us, the 'Loss Payee' will do so within sixty (60) days thereafter, in form and manner as provided by the policy, and further, shall be

subject to provisions and conditions relating to duties following a loss, appraisal, time of payment and of bringing suit.

Payment may be made to both jointly, or separately, at our discretion.

## PROTECTION AND INDEMNITY

Coverage

We will cover damages for **bodily injury** or **property damage** for which an **insured** becomes legally liable through ownership, maintenance, or use of the **insured yacht**, or through a **non-owned yacht** being operated by you with the owner's permission. This includes:
1) coverage for **property damage** to a **non-owned yacht**;
2) with respect to a paid captain or paid crew member, obligations and duties under Jones Act or general maritime law;
3) the cost of the bond to release the **insured yacht** if the **insured yacht** is arrested, confiscated, or detained because of injury or damage to which this coverage applies.

If a premium is shown on the Declarations Page for 'Hull', we will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured yacht**, or **non-owned yacht**, if you are legally obligated to do so. This is not additional insurance, but is included in the limit of Protection and Indemnity coverage.

Wreck means the **insured yacht** has been damaged to such an extent as to render the **insured yacht** not navigable and we determine the **insured yacht** to be a total or **constructive total loss**.

What We Pay

We will pay no more than the limit for 'Hull' shown on the Declarations Page for all **property damage** to a **non-owned yacht** resulting from an **occurrence**.

For all other losses, we will pay no more than the limit for 'Protection and Indemnity' shown on the Declarations Page for all damages, losses or release bonds resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Exclusions

We will not pay for:
1) liability assumed under any contract or agreement;
2) **bodily injury** or **property damage** while the **insured yacht** or a **non-owned yacht** is being transported on land;
3) any fine or penalty assessed by any government unit;
4) **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or **contaminant**, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, including materials to be recycled, reconditioned or reclaimed;
5) **bodily injury** or **property damage** sustained by any **insured** or **resident**;
6) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law;
7) any liability covered or excluded under the **OIL POLLUTION LIABILITY** section of this policy; or
8) punitive or exemplary damages or associated interest.

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Protection and Indemnity' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## OIL POLLUTION LIABILITY

### Coverage

We will cover:
1) the sums which you are legally liable to pay as a result of **property damage** or **bodily injury** arising out of an **oil pollution incident**;
2) the reasonable costs directly associated with the actual clean-up of an **oil pollution incident**;
3) the reasonable costs or expenses legally imposed upon you by those government authorities assisting or monitoring an **oil pollution incident**;
4) administrative charges and civil expenses levied against you by a judiciary body as a result of an **oil pollution incident**;
5) the reasonable costs and expenses to defend you against legal action from an **oil pollution incident**.

**Oil pollution incident** means the sudden, accidental and unexpected emission, discharge, release, leakage, escape or spillage of a **contaminant** from an **insured yacht** or **non-owned yacht** in an accident that is specific in place and time within the policy period.

### What We Pay

We will pay no more than the limit for 'Oil Pollution Liability' shown on the Declarations Page for all damages or expenses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

### Exclusions

We will not pay for:
1) liability assumed under any contract or agreement;
2) any fine or penalty assessed by any governmental unit;
3) an **oil pollution incident**, if any **insured** knows, or has reason to know, of the incident and fails to report it as required by law(s);
4) **property damage** sustained by an **insured** or **resident**;
5) liability for natural resource damage unless legal action commences within one (1) year of the incident;
6) an **oil pollution incident** unless you provide all reasonable cooperation and assistance with containment and clean-up operations as is required by law or by someone acting under their legal authority; or
7) punitive or exemplary damages or associated interest.

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claims or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Oil Pollution Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## LONGSHORE AND HARBOR WORKERS' COMPENSATION

Coverage

We will cover any compensation payments you are responsible for under the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950) and any amendments to this act, as long as your responsibility arises from your ownership or use of an **insured yacht**. We will comply with all the provisions of this Act, and with any rules, regulations, orders and decisions of the Office of Workers' Compensation Programs of the United States Department of Labor.

## MEDICAL PAYMENTS

Coverage

We will cover the reasonable charges for necessary medical, surgical, x-ray, dental, ambulance, hospital and professional nursing services and funeral service expenses incurred within one year from the date of an accident causing **bodily injury** to any person while in, upon, boarding or leaving an **insured yacht**.

The injured person must submit to an examination by a physician selected by us when and as often as we reasonably require.

What We Pay

We will pay no more per person than the limit for 'Medical Payments' shown on the Declarations Page for any **occurrence**. This is the most we will pay, regardless of the number of claims made or watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Each person seeking payment under this coverage must:
1) provide us with written authorization for release to us copies of pertinent medical reports and records; and
2) submit a valid proof of loss within one year of the incurred expenses.

Exclusions

Payments under this section will not be made to, or on behalf of, any person:
1) injured while trespassing;
2) for whom liability is assumed by you under contract or agreement;
3) injured while the **insured yacht** is being transported on land;
4) hired to work for or on behalf of any **insured**; or
5) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Jones Act, Federal

Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law.

Admission of Liability

Any payment made under this section is not an admission of liability by you or us.

## UNINSURED AND UNDERINSURED WATERCRAFT

Coverage

We will pay all sums you or a **family member** are legally entitled to recover as damages from the owner or operator of an **uninsured watercraft** or **underinsured watercraft**. The damages must result from **bodily injury** caused by an **occurrence**, sustained by you or a **family member** while on board the **insured yacht**. The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **uninsured watercraft** or **underinsured watercraft**.

The injured person must submit to an examination by a physician selected by us when and as often as we reasonably require.

**Uninsured watercraft** means a waterborne vehicle of any type:
1) To which no **bodily injury** bond or policy applies at the time of the **occurrence**.
2) Which is a watercraft whose operator or owner cannot be identified and which hits:
   a) you or any **family member** while on board the **insured yacht**; or
   b) an **insured yacht**.

**Underinsured watercraft** means a waterborne vehicle of any type for which the sum of all liability bonds or policies at the time of the **occurrence** is less than the limit of this coverage.

An **uninsured watercraft** or **underinsured watercraft** does not include any watercraft:
1) owned, operated by or available for the regular use of you or any **family member**;
2) which is a **non-owned yacht**; or
3) owned by any governmental unit or agency.

What We Pay

We will pay no more than the limit for 'Uninsured and Underinsured Watercraft' shown on the Declarations Page for all damages or losses resulting from any one **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

If an **underinsured watercraft** causes the **bodily injury**, we will pay only after all other liability bonds or policies have been exhausted by judgments or payments.

Any amount payable under this coverage will be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under **MEDICAL PAYMENTS**. Any sums paid under this coverage will reduce any amount you or a **family member** are entitled to recover under **MEDICAL PAYMENTS**.

Each person seeking payment under this coverage must:
1) provide us with written authorization for release to us copies of pertinent medical reports and records; and
2) submit a valid proof of loss within one year of the incurred medical or funeral expense.

Exclusions

We will not pay for:
1) any claim settled without our consent;
2) **bodily injury** to any person on board the **insured yacht** without your permission;
3) the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits law or any similar law;
4) damages where there is no evidence of physical contact between the **insured yacht** and either an unidentified or **uninsured watercraft**; or
5) **bodily injury** to any person arising out of the transportation of an **uninsured watercraft** or **underinsured watercraft** on land.

This Policy is signed at the Home Office of the company by its president and secretary.

## MARKEL AMERICAN INSURANCE COMPANY
### Glen Allen, Virginia

Richard R. Grinnan
Secretary

F. Michael Crowley
President

**Administrative Office:**
P.O. Box 906
Pewaukee, WI 53072-0906
800-236-2862

# MARKEL AMERICAN INSURANCE COMPANY

**MARKEL**

---

## TRIP WITH WIND COVERAGE ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

**Trip Schedule**

**Insured Yacht:** 2005 DENCHO ANDREWS SLOOP
1152360

From: POLICY NAVIGATION LIMITS
To:    WATERS OF THE CARIBBEAN SEA NOT SOUTH OF 10 DEGREES NORTH LATITUDE (AND RETUR|
Beginning on or after: 2013-11-01
Ending on or before:   2014-06-01
Hull deductible:       3 %
Requirements during trip (if any):

The 'Navigation Limits' shown on the Declarations Page are amended to include a trip beginning at the location described in the above Trip Schedule as 'From' and ending at the location described in the above Trip Schedule as 'To'. This trip will begin no earlier than the date shown as 'Beginning' and end no later than the date shown as 'Ending' in the above Trip Schedule.

During the trip, you must comply with any requirements described in the above Trip Schedule. If you do not comply with these requirements, coverage under this policy will be suspended until you are in compliance with the requirements. We will not cover losses that occur while coverage is suspended.

The premium for this endorsement is fully earned on issuance. In the event of cancellation, there shall be no return premium for this endorsement.

The following provisions are amended only for the purposes of this trip:

**PHYSICAL DAMAGE, 2. Loss Conditions, a. Deductibles, item i.** is amended by adding the following:

> However, during the period of this trip, the minimum deductible applicable to Hull Coverage is the deductible shown in the above Trip Schedule.

All other terms, conditions, and limitations of the policy remain unchanged.

**MHY5076-0201**                                                                 **Page 1 of 1**



# MARKEL AMERICAN INSURANCE COMPANY

## TRIP WITH WIND COVERAGE ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

| Trip Schedule |
|---|
| **Insured Yacht:** 2005 DENCHO ANDREWS SLOOP<br>1152360<br><br>From: NEWPORT, RI<br>To:     BERMUDA AND RETURN<br>Beginning on or after: 2014-06-01<br>Ending on or before:   2014-07-01<br>Hull deductible:       3 %<br>Requirements during trip (if any): |

The 'Navigation Limits' shown on the Declarations Page are amended to include a trip beginning at the location described in the above Trip Schedule as 'From' and ending at the location described in the above Trip Schedule as 'To'. This trip will begin no earlier than the date shown as 'Beginning' and end no later than the date shown as 'Ending' in the above Trip Schedule.

During the trip, you must comply with any requirements described in the above Trip Schedule. If you do not comply with these requirements, coverage under this policy will be suspended until you are in compliance with the requirements. We will not cover losses that occur while coverage is suspended.

The premium for this endorsement is fully earned on issuance. In the event of cancellation, there shall be no return premium for this endorsement.

The following provisions are amended only for the purposes of this trip:

**PHYSICAL DAMAGE**, 2. Loss Conditions, a. Deductibles, item i. is amended by adding the following:

> However, during the period of this trip, the minimum deductible applicable to Hull Coverage is the deductible shown in the above Trip Schedule.

All other terms, conditions, and limitations of the policy remain unchanged.

MHY5076-0201

Page 1 of 1

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## CAPTAIN OR CREW LIABILITY ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

| Schedule | |
|---|---|
| **Insured yacht:** | 2005 DENCHO ANDREWS SLOOP |
| | 1152360 |

**PROTECTION AND INDEMNITY** is amended by adding the following:

Additional Definition

An **insured**, as used in the **PROTECTION AND INDEMNITY** section, means you, your paid captain or crew, or any other person, firm, corporation or legal entity that may be operating the **insured yacht** with your prior permission. However, this does not include any person, firm, corporation or other legal entity or any of their agents or employees operating a shipyard, boat repair facility, marina, yacht club, sales agency, chartering agency, yacht broker, boat service station, salvor, towing service or similar organization.

All other terms, conditions, and limitations of the policy remain unchanged.



# MARKEL AMERICAN INSURANCE COMPANY

**MARKEL**

---

## POLICY CHANGES ENDORSEMENT

---

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

| Schedule | |
|---|---|
| **Insured yacht:** | 2005 DENCHO ANDREWS SLOOP<br>1152360 |

WITH MHY5079-1209 ULTRA SAILING PROTECTION AND INDEMNITY ENDORSEMENT PROTECTION AND INDEMNITY, WHAT WE PAY, IS DELETED IN ITS ENTIRETY AND REPLACED WITH THE FOLLOWING: WHAT WE PAY WE WILL PAY NO MORE THAN THE LIMIT FOR PROTECTION AND INDEMNITY SHOWN ON THE DECLARATIONS PAGE FOR ALL DAMAGES, LOSSES OR RELEASE BONDS RESULTING FROM ANY OCCURRENCE. HOWEVER WITH RESPECT TO A PAID CAPTAIN OR PAID CREW MEMBER, FOR BODILY INJURY AND OBLIGATIONS AND DUTIES UNDER JONES ACT OR GENERAL MARITIME LAW, WE WILL PAY NO MORE PER OCCURRENCE THAN THE LESSER OF THE FOLLOWING: 1) THE LIMIT FOR PROTECTION AND INDEMNITY SHOWN ON THE DECLARATIONS PAGE; OR 2) THE LIMIT OF THE NAMED INSUREDS LIABILITY; OR 3) $1,000,000. THIS IS THE MOST WE WILL PAY, REGARDLESS OF THE NUMBER OF PERSONS COVERED UNDER THIS SECTION, CLAIMS MADE, INSURED WATERCRAFT OR PREMIUMS SHOWN ON THE DECLARATIONS PAGE OR THE NUMBER OF WATERCRAFT INVOLVED.

All other terms, conditions, and limitations of the policy remain unchanged.

MHY5036-0108



# MARKEL AMERICAN INSURANCE COMPANY

## MARYLAND AMENDATORY ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

**GENERAL CONDITIONS**, items 4. Notice of Cancellation and 15. Nonrenewal are deleted in their entirety and replaced with the following:

4. Notice of Cancellation
   You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

   We may cancel this policy by delivering or mailing notice of cancellation to the first named 'Insured' at the last address shown in our records at least:
   a. ten (10) days before the cancellation takes effect if:
      i. the cancellation is for nonpayment of premium; or
      ii. this policy has been in effect for less than sixty (60) days and is not a renewal policy.
   b. forty-five (45) days before the cancellation takes effect in all other cases.

   After this policy has been in effect for sixty (60) days, or if this is a renewal policy, we will cancel only:
   a. for nonpayment of premium due;
   b. for misrepresentation or fraud;
   c. for substantial breach of your duties under this policy;
   d. if the risk changed substantially since the policy was issued; or
   e. for failure to comply with our underwriting requirements within 60 days of the term effective date.

   Proof of mailing of this notice to the first named 'Insured' will be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice will become the end of the policy period.

   This policy will terminate without any written notice and all premiums will be deemed fully earned by us when we pay for a total loss or a **constructive total loss**.

15. Nonrenewal
    If we decide not to renew your policy, we or our authorized representative will mail to the first named 'Insured', at the address shown on the Declarations Page, written notice of nonrenewal. The written notice will be mailed to the first named 'Insured' at least forty-five (45) days before the end of the policy term. A copy of the notice will also be sent to any lienholder named on the Declarations Page. If we decide not to renew your policy, our mailing of notice to the address of the first named 'Insured' shown on the Declarations Page will constitute proof of notice as of the date we mail it.

All other terms, conditions, and limitations of the policy remain unchanged.

MHY5043-0108            Page 1 of 1

 **MARKEL AMERICAN INSURANCE COMPANY**

**MARKEL**

---

## ULTRA SAILING PROTECTION AND INDEMNITY ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

| Schedule | |
|---|---|
| **Insured yacht:** | 2005 DENCHO ANDREWS SLOOP |
| | 1152360 |

**PROTECTION AND INDEMNITY** is amended by adding the following:

Deductible

    Each **occurrence** will be subject to a deductible of $5,000. You warrant that you will indemnify us for any payment we make on your behalf toward this deductible.

**PROTECTION AND INDEMNITY**, Coverage is deleted in its entirety and replaced with the following: Coverage

    We will cover damages for **bodily injury** or **property damage** for which an **insured** becomes legally liable through ownership, maintenance, or use of the **insured yacht**. This includes:
1) with respect to a paid captain or paid crew member, obligations and duties under Jones Act or general maritime law;
2) the cost of the bond to release the **insured yacht** if the **insured yacht** is arrested, confiscated, or detained because of injury or damage to which this coverage applies.

    If a premium is shown on the Declarations Page for 'Hull', we will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured yacht**, if you are legally obligated to do so. This is not additional insurance, but is included in the limit of Protection and Indemnity coverage.

    Wreck means the **insured yacht** has been damaged to such an extent as to render the **insured yacht** not navigable and we determine the **insured yacht** to be a total or **constructive total loss**.

**PROTECTION AND INDEMNITY**, What We Pay is deleted in its entirety and replaced with the following:

What We Pay

    We will pay no more than the limit for 'Protection and Indemnity' shown on the Declarations Page for all damages, losses or release bonds resulting from any **occurrence**.

---

# ULTRA SAILING PROTECTION AND INDEMNITY ENDORSEMENT

**PROTECTION AND INDEMNITY**, What We Pay (cont.)

However, with respect to a paid captain or paid crew member, for **bodily injury** and obligations and duties under Jones Act or general maritime law, we will pay no more per **occurrence** than the lesser of the following:
1) the limit for 'Protection and Indemnity' shown on the Declarations Page;
2) the limit of the named insured's liability; or
3) $500,000.

This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

**PROTECTION AND INDEMNITY**, Exclusions, item 2) is deleted and replaced with the following:

2) **bodily injury** or **property damage** while the **insured yacht** is being transported on land;

**OIL POLLUTION LIABILITY**, Coverage is deleted in its entirety and replaced with the following:

Coverage

We will cover:
1) the sums which you are legally liable to pay as a result of **property damage** or **bodily injury** arising out of an **oil pollution incident**;
2) the reasonable costs directly associated with the actual clean-up of an **oil pollution incident**;
3) the reasonable costs or expenses legally imposed upon you by those government authorities assisting or monitoring an **oil pollution incident**;
4) administrative charges and civil expenses levied against you by a judiciary body as a result of an **oil pollution incident**;
5) the reasonable costs and expenses to defend you against legal action from an **oil pollution incident**.

**Oil pollution incident** means the sudden, accidental and unexpected emission, discharge, release, leakage, escape or spillage of a **contaminant** from an **insured yacht** in an accident that is specific in place and time within the policy period.

All other terms, conditions, and limitations of the policy remain unchanged.

# MARKEL AMERICAN INSURANCE COMPANY

---

## GENERAL AMENDATORY ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

**DEFINITIONS,** item 15. **Non-owned yacht** is deleted in its entirety and replaced with the following:

15. **Non-owned yacht** means any watercraft being operated by you with the owner's permission that is not:
    a. owned in whole or in part by you or any **resident;**
    b. rented or under charter to you;
    c. being used for other than private pleasure;
    d. available for your regular use;
    e. more than 5 feet longer than the **insured yacht;**
    f. designed for, or capable of, speeds in excess of 65 miles per hour; or
    g. a **personal watercraft.**

**DEFINITIONS,** item 22. **Windstorm** is deleted in its entirety and replaced with the following:

22. **Windstorm** means tropical depressions, tropical storms or hurricanes as designated by the National Weather Service and/or National Hurricane Center.

**PHYSICAL DAMAGE,** 1. Coverage, a. Hull Coverage (Including **Tenders**), item iii. What We Pay is amended by deleting the following sentence:

Any partial loss resulting from **windstorm** will be paid on an **actual cash value** basis.

**PHYSICAL DAMAGE,** 1. Coverage, a. Hull Coverage (Including **Tenders**), iv. Exclusions, items 4) and 5) are deleted in their entirety and replaced with the following:

4) **windstorm** for any **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page;
5) **manufacturer's defects** or **design defects;**
6) **latent defects.** However, any resulting loss or damage will be covered.

**PHYSICAL DAMAGE,** 1. Coverage, f. Windstorm Extra Expense, item ii. What We Pay is deleted in its entirety and replaced with the following:

ii. What We Pay
   We will pay 50% of your actual incurred expenses, subject to a maximum of $1,000 for any one **windstorm,** and $2,000 total in any single policy period.

**PHYSICAL DAMAGE,** 2. Loss Conditions, a. Deductibles, item iii. is deleted in its entirety and replaced with the following:

iii. The deductible applicable to **marine electronics** for **insured yacht** for all covered causes of loss except theft without evidence of forced removal or forced entry is $500. If the above conditions are not met, the deductible shown for 'Hull' on the Declarations Page applies.

**PROTECTION AND INDEMNITY,** Exclusions, item 4) is deleted in its entirety.

All other terms, conditions, and limitations of the policy remain unchanged.

MHY5030-0412                                                            Page 1 of 1

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## ULTRA SAILING HULL ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

| Schedule | |
|---|---|
| Insured yacht: | 2005 DENCHO ANDREWS SLOOP<br>1152360 |

**PHYSICAL DAMAGE, 1.** Coverage, a. Hull Coverage (Including **Tenders**), item ii. Under Hull Coverage, we do not cover: is amended by adding the following:

      sails.

**PHYSICAL DAMAGE, 1.** Coverage, a. Hull Coverage (Including **Tenders**), item iii. What We Pay is deleted in its entirety and replaced with the following:

  iii. What We Pay
    1) In the event of a total loss or **constructive total loss**, we will pay the applicable limit on the Declarations Page, less the applicable deductible.

        However, if there is a total loss or **constructive total loss** to a **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page for it, then the loss to such a **tender** will be adjusted as a partial loss to the **insured yacht**. The most we will pay for loss or damage to such a **tender** will be 5% of the 'Hull' limit, subject to a maximum of $50,000.00.
    2) In the event of a partial loss, we will pay for damage on a **replacement cost** basis, except as described in the Actual Cash Value provision.
    3) Actual Cash Value
      a) We will pay for repairs to or replacement of the following lost or damaged property on an **actual cash value** basis:
        i) protective covers of any type;
        ii) outdrive units and outboard motors starting with the 6th year from the date of manufacture;
        iii) a **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page for it;
        iv) carpeting, upholstery, cushions, and any fabric;
        v) bottom paint; and
        vi) inboard engines, transmissions, generators and attached components starting with the 11th year from the date of manufacture. However, if replacement or repair is made using remanufactured or rebuilt components, depreciation will not be applied. Depreciation will not apply to shafts, struts, or propellers.
      b) We will pay 50% of the cost to repair or replace the following lost or damaged property, less the applicable deductible: any running or standing rigging and any related components, including but not limited to the mast, spars, lines and stays, whether attached or not.

---

# ULTRA SAILING HULL ENDORSEMENT

---

**PHYSICAL DAMAGE,** 1. Coverage, a. Hull Coverage (Including **Tenders**), item iii. What We Pay (cont.)

We pay for repairs that are made in accordance with the manufacturer's specifications or accepted repair practices, including spot repair.

If the **insured yacht** was damaged before the loss, we will not pay to repair the prior damage. In the event of a total loss or **constructive total loss,** the amount we will pay will be reduced to the cost that would have been incurred had the prior damage been repaired.

**PHYSICAL DAMAGE,** 1. Coverage, a. Hull Coverage (Including **Tenders**), item iv. Exclusions is amended by adding the following:

We will not pay for loss, damage or expense caused by or resulting from diminution of function. Diminution of function means the actual or perceived loss of functionality, including actual or perceived diminished competitiveness, which results from a covered cause of loss.

**PHYSICAL DAMAGE,** 2. Loss Conditions, a. Deductibles, item v. is deleted in its entirety.

**PHYSICAL DAMAGE,** 2. Loss Conditions, a. Deductibles is amended by adding the following:

The applicable deductible shown on the Declarations Page is doubled for loss, damage or expense which occurs while participating in any organized race, speed, or stunting contest.

All other terms, conditions, and limitations of the policy remain unchanged.